**Luverne IHNEN, Plaintiff,**

**v.**

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. 1338.**

United States District Court
D. South Dakota, S. D.

April 28, 1966.

Carleton R. Hoy, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for plaintiff.

Harold C. Doyle, U. S. Dist. Atty., and David V. Vrooman, Asst. U. S. Atty., Sioux Falls, S. D., for defendant.

NICHOL, District Judge.

Luverne Ihnen, claimant, is now before this court for the second time with an action brought pursuant to 42 U.S.C. Sec. 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying claimant a period of disability and disability insurance benefits under Secs. 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. Secs. 416 and 423.

In January, 1963, the claimant brought a similar action to review a final decision of the Secretary denying disability insurance benefits. Upon review the late Chief Judge Mickelson in Ihnen v. Celebrezze, 223 F.Supp. 157 (D.S.D.1963), remanded the case to the Secretary to hear further evidence. Upon remand additional evidence was received and a hearing examiner in his recommended decision of August 14, 1964, again concluded that the claimant was not entitled to disability insurance benefits or to a period of disability. On October 19, 1964, the Appeals Council approved and adopted the recommended decision of the hearing examiner, such decision becoming the final decision of the Secretary. It is from this decision that the claimant now seeks review.

The ultimate issue before this court on review is whether the finding of the Secretary that the claimant has not established his inability to engage in any substantial gainful activity is supported by substantial evidence.[1]

The legal standards which this court must follow in reviewing a final decision of the Secretary have been carefully set forth in several recent decisions by the Eighth Circuit Court. Brasher v. Celebrezze, 340 F.2d 413 (8th Cir. 1965); Celebrezze v. Sutton, 338 F.2d 417 (8th Cir. 1964); Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). Therefore, it will not be necessary to review the standards in detail at this time. At the outset it need only be noted that the claimant has the burden of establishing his claim of disability as that term is used in the Act. "Disability" is defined in the Act at Sec. 216(i) (1), as amended, 42 U.S.C. Sec. 416(i) (1), as:

> "(T)he * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous

1. 42 U.S.C. Sec. 405(g) provides, *inter alia,* "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." The courts have held that not only are the findings of fact conclusive, but the reasonable inferences drawn from such facts are also conclusive, if supported by substantial evidence. Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965); Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963).

period of not less than 12 months * * *."

Claimant was born July 31, 1916, at Chancellor, South Dakota. His formal education ceased at the eighth grade. The claimant's employment record is far from impressive, in that the claimant has held numerous jobs, all of which could be classified as manual labor. He has worked at various times as a farm hand, an operator of heavy construction equipment, an automobile mechanic, an operator of a water drilling rig, a common laborer for two meat packing firms, and other similar employment too numerous to mention.

On September 13, 1956, the claimant injured his back while employed by Child Bros., Inc., a produce company in California. At the time he was being treated for his back injury, it was discovered that he had carcinoma of the penis. On November 23, 1956, the claimant underwent surgery requiring a radical amputation of the penis with block dissection of inguinal and femoral lymph nodes and perineal urothrotomy. On December 31, 1956, he again underwent surgery, at which time a skin graft from his left leg to his abdominal area was performed. He was ultimately discharged from the hospital on January 10, 1957.

The administrative procedures which have preceded this review were carefully set forth by the late Chief Judge Mickelson in Ihnen v. Celebrezze, 223 F.Supp. 157, 158 (D.S.D.1963). It is sufficient for this review to state that the claimant originally filed an application for benefits on October 28, 1958, which was denied. Application was again filed on February 13, 1959, at which time it was determined that the statutory earning requirements were last met on March 31, 1957. That the earnings requirements were met on that date is not disputed at this time, and it is also equally clear that the alleged disability must be shown to have existed at that time.

The claimant has been examined by about ten doctors and has been hospitalized at least five times from 1957 to 1964. As a result there is a voluminous amount of medical and hospital reports in evidence, and it would be impossible to set forth in any detail the findings of the several physicians.

From a review of the medical evidence, it is obvious to the court that there is overwhelming evidence that the claimant, as of March, 1957, had some physical and mental impairments which were medically determinable and which were, and continue to be, of indefinite duration. Therefore, the determinative issue is whether the claimant's mental and physical impairments are incapacitating to the extent that the claimant is unable to engage in any substantial gainful activity.

Determinations of disability made by nongovernmental organizations or by another governmental agency are not binding upon the Secretary, nor are the conclusions of any physician binding as to the extent of disability. 20 C.F.R. Secs. 404.1525, 404.1526. However, such determinations and conclusions are relevant and must be considered when they are supported by substantial evidence. Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964); Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (7th Cir. 1959). It is for this reason that the court has undertaken to set forth several of the determinations and conclusions which appear throughout the record.

The State Department of Public Welfare has twice determined that vocational rehabilitation was not feasible in regard to the claimant. An inter-office memorandum of the Department dated April 17, 1957, states that:

> "It is the decision of the review team that the applicant is under a disability of sufficient degree to warrant his eligibility for Aid to the Disabled. The diagnosis of carcinoma of the penis with radical resection, weakness with possibility of metastasis, and your social history indicate to us that the applicant is unable to engage in substantial, gainful activity within his mental and physical competence.
>
> "Because of the diagnosis and prognosis, no referral was made to the

Division of Vocational Rehabilitation."

In 1961 it was again decided by the Department that the claimant should not be referred to vocational rehabilitation.

In April, 1957, the claimant was interviewed by a field representative of the Department of Public Welfare, an interview which the hearing examiner termed as "very significant." The representative stated that, "Because of the type of employment that he has had the past years, it appears that the effect of his disability to his skills is total."

On July 16, 1964, Mr. Weisensee, a vocational consultant, testified as to the claimant's ability, as of March, 1957, to engage in any substantial gainful activity. During the course of the examination the hearing examiner asked the following question: "Now, to get into this situation again, what I want to find out is this: If some employer had said, I will hire you to do X work, whatever it is, could this man have done any work?" The vocational consultant answered, in part, "He may be physically all right, but with the physical situation and an emotional disturbance coming into the picture, he probably could not have worked."

Several physicians also rendered opinions as to the claimant's ability to engage in substantial employment. Dr. Carlos E. Kemper examined the claimant approximately forty times from May 16, 1957, to September 18, 1961. A statement of Dr. Kemper was taken on July 13, 1964, at which time he stated that in his opinion the claimant was unable to perform manual labor as of May, 1957, and that, "* * * as far as I know, I could not imagine any type of employment he was suited to do."

Dr. Richard B. Leander, the only psychiatrist to have examined the claimant, stated on July 8, 1964, that at the time he examined the claimant in 1961, "* * the emotional status was such that this would be a complete type of inability to work or to be trained at that time." Dr. Leander felt that this was also the claimant's condition in March, 1957.

On March 7, 1957, Dr. Layman R. Low stated in a medical report to the Department of Public Welfare that the claimant had no present work capacity, and that all working conditions should be avoided at the present time. In checking the physical capacities of the claimant, Dr. Low found that there was some limitation in the following physical activities: walking, stooping, lifting, pushing, standing, kneeling, and pulling.

Dr. Warren L. Jones first examined the claimant on October 18, 1961, and he concluded at that time that the claimant was disabled, "* * * but disabled predominately on the basis of nervous tension and anxiety and functional symptoms." Again on April 26, 1962, Dr. Jones concluded that, "On the basis of my observations * * * I would consider this man completely and totally disabled in carrying out any gainful employ."

Although other medical opinions and conclusions appear throughout the record, it is not necessary to set them out in detail. From a review of the entire record, it is obvious to the court that the claimant is unable to engage in the type of work to which he had been accustomed. Although there may be some evidence that the claimant could perform light or sedentary work, there is no evidence that he could perform manual labor like he he had done prior to his surgery in 1956. The only statement in the record which suggests that the claimant could perform any manual labor is the following statement by the hearing examiner in his opinion:

> "The examiner believes that the claimant could operate a forklift at a factory. This involves the operation of a slow-moving vehicle on a level surface where there is a limited amount of physical activity required on the part of the worker. In most jobs the worker is also able to get off the forklift and move about if he so desires. Claimant could also operate a road roller which is a machine with large round rollers used in highway construction in order to smooth the sur-

face of new roads. These machines are used when the road is nearing completion and do not involve any large effort to operate or any up and down motion. The machine is directed with levers and is done from a sitting position. This is similar type of work to what the claimant has done in the past."

There is not a scintilla of evidence in the record which would support such a finding. The examiner has inferred that the claimant if operating a forklift could get off and move about whenever he desires, and that the claimant could engage in heavy construction work without being required to perform heavy manual labor which is so often connected with road building. The claimant "* * * does not live in a 'make-believe' industrial world where employers provide sheltered work shop conditions, instead of being in business to generate profit." Terrell v. Celebrezze, 245 F.Supp. 874, 875 (W.D. So.Carolina 1965).

That the claimant is unable to engage in the type of work to which he had been accustomed is not alone sufficient to prove disability. It must be shown that the claimant cannot engage in "any substantial gainful activity." Numerous courts have held that, "The word 'any' must be read in light of what is reasonably possible, not what is conceivable." Celebrezze v. Bolas, supra, 316 F.2d at page 501; Kerner v. Flemming, 283 F.2d 916 (2nd Cir. 1960); Kohrs v. Flemming, 272 F.2d 731 (8th Cir. 1959). Substantial gainful activity must be, "* * * both substantial and gainful and within the claimant's capability, realistically judged by his education, training, and experience * * *." Brasher v. Celebrezze, supra, 340 F.2d at page 414.

Where the claimant has shown his inability to perform his usual occupation, as the court has found in this case, the burden is upon the Secretary "* * * to adduce some evidence from which a finding can be made that he can do some type of work; actually not apparently." Ellerman v. Flemming, 188 F.Supp. 521, 527 (W.D.Mo.1960); Carden v. Gardner, 352 F.2d 51 (6th Cir. 1965); Haley v. Celebrezze, 351 F.2d 516 (10th Cir. 1965); Thompson v. Celebrezze, 334 F.2d 412 (6th Cir. 1964); Celebrezze v. Bolas, supra. It is recognized, however, that the Secretary does *not have the burden of finding a specific* employer and job for the claimant. Brasher v. Celebrezze, supra.

Generally the courts ask the following question: "[W]hat employment opportunities are there for a man who can do only what applicant can do?" Hodgson v. Celebrezze, 312 F.2d 260, 264 (3rd Cir. 1963); Hayes v. Celebrezze, 311 F.2d 648 (5th Cir. 1963). The Secretary found that the claimant could, in addition to operating a forklift and a road roller—a conclusion which the court has found to be entirely without support in the evidence—work as a delivery man for local drugstores or floral shops. The hearing examiner concluded that:

> "The claimant could work as a delivery man for a drugstore. There are 12 drugstores listed in the yellow section in the Sioux Falls telephone directory which offer free delivery service. The claimant can deliver prescriptions. There are four floral shops which offer free delivery service and the claimant could function as a delivery man there. His walking is adequate, and he has the physical ability to drive a car."

This conclusion reached by the examiner is not supported by substantial evidence, it is contradicted by the examiner's own findings, and it is a result of several erroneous statements of the law.

Although the vocational consultant testified that the claimant could physically drive a car and deliver prescriptions or flowers, the examiner found that:

> "There is no question but what there has been some tautness from scar tissue as a result of the penectomy in 1957." (The date actually being in 1956) "Here again, although there is

some limitation, it does not appear to be of disabling significance. If the claimant were necessarily involved in work activities or other activities that involved running, climbing, jumping or ones that required high mobility, indeed it would become a significant factor."

Few occupations would require a greater degree of mobility than that of a delivery man.

It is apparent throughout the record that the examiner on several occasions has misconstrued the law. In his recommended decision the hearing examiner stated:

"The Hearing Examiner therefore concludes that although the claimant may have had a condition which involved swelling of the legs, this condition did not limit him to the extent that he was bedridden and that actually in March 1957 he was able to walk about to the extent set forth." (About three or four blocks)

To be disabled within the meaning and intent of the Act a person need not be "bedridden" or "completely helpless." Celebrezze v. Warren, 339 F.2d 833 (10th Cir. 1964); Teeter v. Flemming, supra. No court has required that a claimant must be completely helpless in order to qualify for disability payments.

In response to the contention of the claimant that he has constant pain, the examiner's decision states:

"Accordingly, it is necessary to look for objective evidence to support allegations of pain. There are a few disorders in which pain is constant, unremitting, and wholly irresponsive to therapeutic measures. When it is, there will be observable signs, as for example, inability to eat and substantial loss of weight."

Although the court feels that there is objective evidence of pain in the record, objective evidence is not necessary to support a finding of pain. As the court held in Page v. Celebrezze, 311 F.2d 757, 762 (5th Cir. 1963):

"If pain is real to the patient and as such results in that person being physically unable to engage in any gainful occupations suited to his training and experience, and this results from 'any medically determinable physical or mental impairment' the disability entitles the person to the statutory benefits even though the cause of such pain cannot be demonstrated by 'objective clinical and laboratory findings.'"

Celebrezze v. Warren, supra; Goodwin v. Gardner, 250 F.Supp. 454 (N.D.Cal. S.D. 1966); Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964); Hayes v. Celebrezze, supra. In determining the degree of pain which the claimant is suffering, it is obvious to the court that the examiner has applied a test which is much more stringent than the law requires.

The court is fully cognizant of the fact that the Secretary has the authority, and in fact the responsibility, to disregard any opinions or conclusions of expert witnesses which are not supported by the evidence. It is also true that an expert's opinion is only advisory. However, the court feels that it has the authority and responsibility to consider any expert's opinion which the Secretary may have disregarded, where the Secretary rejects the opinion primarily upon the basis of an erroneous application of the law.

In response to certain hypothetical questions presented by the hearing examiner, Mr. Weisensee, a vocational consultant, testified at a hearing on July 16, 1964, that:

"No, that he (claimant) wasn't employable; that he was disabled to the extent of not being employable at any time. * * * Now, to employ a person like that or to get him on a job of any kind or anything he could do, we would say that he's almost unemployable. In other words, his disability is great enough to keep him out of the market of being employed."

The hearing examiner in his recommended decision rejected the testimony of the vocational consultant, stating:

"The test in a disability case is not whether the claimant is employable but whether or not he is able to engage in any substantial gainful activity. There are cases where an employer will not hire someone because of their color. This person certainly is not disabled within the meaning of the Social Security Act. * * * (T)he witness evidently believed that the problem was employability, rather than ability to work. This, together with his assumption from the reports in the file and the oral testimony that this claimant had adequate motivation, leads one to the inescapable conclusion that this witness' conclusion that the claimant was not able to work does not have any sound basis."

The examiner accurately stated the law when he said that a person would not be disabled within the meaning of the Act if he were unemployable solely because of his race, color or creed. However, it is an entirely different matter when the claimant is unemployable because of his physical and mental disabilities. The court in Cyrus v. Celebrezze, 341 F.2d 192, 196 (4th Cir. 1965), stated that, "* * * there is no evidence that he actually checked * * * to see if they employed any people for these jobs, *to say nothing of the more pertinent issue which is the employability of this claimant with his restricted capacity.*" (Emphasis supplied.) McLaughlin v. Celebrezze, 239 F.Supp. 802 (E.D.Tenn. 1965). The Secretary, "* * * must determine whether there is a reasonable opportunity for the claimant to compete, in the manner normally pursued by persons genuinely seeking work, for a job within his determined capabilities." Celebrezze v. Kelly, 331 F.2d 981, 982 (5th Cir. 1964). "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Hodgson v. Celebrezze, supra, 312 F.2d at page 264. If it is found that an individual is unemployable because of his disability, then certainly there is no reasonable opportunity for employment available.

It is apparent from reading the recommended decision of the hearing examiner that the examiner was greatly influenced by the fact that in 1958, the claimant drove a school bus two hours a week for 12 days, for which he received $48.00. The claimant, while substituting for the regular employee, drove a school bus one hour in the morning and one hour in the afternoon. In this regard, the Secretary's own regulation, 20 C.F.R. Sec. 404.1534(d), provides that:

"Earnings from work activities as an employee which average less than $50 a month do not show that the individual is able to engage in substantial gainful activity. However, an evaluation of the work performed may establish that the individual is able to engage in substantial gainful activity, regardless of the amount of his average monthly earnings."

In evaluating the work performed, the examiner stated that, "The claimant may not have been required to accomplish much physical labor but at the same time the claimant was mentally and physically able to accomplish this job and for the length of the job."

The hearing examiner was also apparently unduly influenced by the fact that the claimant and his family had received payments from the Department of Public Welfare, "* * * not only in 1957 and subsequent years but prior to any alleged disability and commencing in 1936." The Appeals Council was equally impressed by such facts, stating:

"Therefore, the Appeals Council considers them correct and is in agreement with the finding of the hearing examiner that the claimant has been better off financially since his operation than at any time prior thereto. * * * The Appeals Council also accepts the inference that this situation has significantly reduced the claimant's desire and financial need to be employed."

That the claimant and his family have received welfare benefits in the past and continue to receive such benefits does not contribute any evidence of the claimant's physical and mental ability to "engage in any substantial gainful activity." At the most it could only provide an inference as to the claimant's desire or motivation. As the court held in Davis v. Celebrezze, 213 F.Supp. 477, 479 (E.D. Texas 1963):

> " * * * we can only surmise that the Administrative Officers were influenced by the record of Plaintiff's earnings over the period of time, and also perhaps by the fact that he and his family had been recipients of considerable welfare funds, both State and Federal. However, such facts, under a fair construction of the Social Security Act, should have no bearing on a claimant's right to receive benefits."

It is difficult to believe that Congress did not realize when it enacted the Social Security Act that the persons who would benefit the most from such legislation would be those persons who would not be strangers to welfare programs. Individuals, like the claimant, who lack the education, training and capacity to adjust to major impairments will always be the primary recipients of the various state and federal welfare programs.

The conclusion of the Secretary that the claimant could engage in substantial gainful activity, such as a delivery man for certain businesses advertising free delivery service in the "yellow pages" of a telephone book, is based upon speculation and conjecture, and it is not based upon substantial evidence when the record is considered as a whole. The court is always reluctant to reverse a decision of the Secretary; however, the court has no choice in this case, where it is apparent that the Secretary's decision is not supported by substantial evidence, it is contradicted in part by the Secretary's own findings of fact, and it is the result of several erroneous statements and applications of the law.

The voluminous record, 701 pages, adequately sets forth the facts pertinent to this case, and it would not be necessary or helpful to remand the case to hear further evidence.

Therefore, counsel for the plaintiff shall prepare an order in accordance with this memorandum decision, denying the defendant's motion for summary judgment, and granting the plaintiff's motion for summary judgment, and reversing and remanding the case to the Secretary of Health, Education and Welfare, with directions that the claimant be granted a period of disability and disability benefits in accordance with his application.