357 F.Supp. 540 (1973)
Ola M. GOODWIN, Plaintiff,
v.
Elliot L. RICHARDSON, Secretary of Health, Education and Welfare of the United States Government, Defendant.
No. S72 C 13.
United States District Court, E. D. Missouri, Southeastern Division.
February 22, 1973.
*541 Frank Gillespie, Charleston, Mo., and Weber Gilmore, Sikeston, Mo., for plaintiff.
Daniel Bartlett, Jr., U. S. Atty., and Robert E. Grote, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This is an action pursuant to 42 U.S. C. § 405(g), § 205(g) of the Social Security Act (hereinafter "the Act"), for judicial review of the final decision of the defendant (hereinafter "the Secretary"). On October 10, 1968, plaintiff filed an application for a period of disability and disability insurance benefits under §§ 416(i) and 423. This application was denied initially and on reconsideration. A second application for disability benefits was filed October 10, 1969, and denied December 3, 1969. A third application was filed June 12, 1970, and thereafter denied. Plaintiff requested reconsideration of this third application. On reconsideration this application was denied.
On July 21, 1971, pursuant to plaintiff's request a hearing was held. The hearing examiner denied plaintiff's application. The hearing examiner was upheld on administrative review by the Appeals Council on November 24, 1971, and the hearing examiner's decision became the final decision of the Secretary. (Tr. 7). The Appeals Council granted plaintiff additional time  until April 28, 1972  in which to commence a civil action.
Plaintiff seeks by this action, filed April 17, 1972, a determination that she is entitled to disability benefits from and after May 1968. In his answer to plaintiff's complaint defendant alleged that the final decision is correct and supported by substantial evidence, and that plaintiff "has no claim upon which relief can be granted." Defendant, on September 26, 1972, moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. On February 12, 1973, plaintiff cross-moved for summary judgment. The action is before the Court upon these motions.
Judicial review of the Secretary's final decision is limited in scope in that the findings of the Secretary and the reasonable inferences drawn therefrom are conclusive if they are supported by substantial evidence upon the entire record. McCalip v. Richardson, 460 F.2d 1124 (8th Cir. 1972); Easttam v. Secretary of Health, Education and Welfare, 364 F.2d 509 (8th Cir. 1966); *542 Brasher v. Celebrezze, 340 F.2d 413 (8th Cir. 1965).
Plaintiff is a female, born March 12, 1920. The application filed June 12, 1970, which is the subject of the instant final decision, states that she became disabled in May, 1968, due to diabetes and plaintiff maintains that she remains disabled. When plaintiff appeared before the hearing examiner she was unmarried, had been living with her ninety-year-old mother, and had been formally educated up to and including the seventh grade. She prosecuted her application through the administrative proceedings without aid of counsel.
When plaintiff filed the instant application for a determination of disability and disability benefits it became her burden to prove her entitlement. This burden does not shift. Garrett v. Richardson, 471 F.2d 598 (8th Cir. 1972). In logical progression the elements of plaintiff's claim which she had to prove were that she "is under a disability", 42 U.S.C. § 423(a)(1)(D), in that
(1) a disability is "any medically determinable physical or mental impairment," § 423(d)(1)(A),
(a) resulting "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," § 423(d)(3); and
(b) "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" § 423(d)(1)(A); and
(2) the "physical or mental impairment or impairments are of such severity that [plaintiff] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [plaintiff] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work," § 423(d)(2) (A).
Defendant found that plaintiff is suffering from diabetes mellitus and has been for many years. (Tr. 16). It clearly appears from the hearing examiner's discussion of the evidence that he considered plaintiff's diabetic condition to be an "impairment". (Tr. 16-17). He further found that "she has had many episodes of diabetic acidosis and hypoglycemic reactions." (Tr. 16). The record shows that plaintiff claimed other impairments, i. e. a diffuse goiter, a tumor excised from her left breast, right hip osteoarthropathy, peripheral neuropathy, and peripheral vascular insufficiency. However, the hearing examiner found them to be of insufficient severity to warrant a disability determination.
Regarding the effects of the diabetes mellitus, the examiner stated:
. . . Her diabetes has been characterized as being of the "brittle" type. It is noted that many of the episodes of acidosis and hypoglycemic reactions in the past requiring hospitalization were caused by claimant's failure to follow dietary instructions and other therapeutic measures suggested by her treating physician and, following a brief stay in the hospital, her diabetes was again under good control at the time of discharge. Claimant has worked for many years with her diabetic impairment.
* * * * * *
. . . It is concluded that the residual impairment of function caused by the impairments may preclude claimant from engaging in tasks requiring arduous physical effort but it is, nevertheless, clearly established by the medical findings and demonstrated residual capacity to engage in less strenuous activities with appreciable regularity that her physical and mental abilities have not been so severely impaired as to have rendered it impossible *543 for her to do any type of substantial gainful work.
The weight of the medical evidence clearly establishes that claimant retains the physical and mental capacity to engage in sedentary or light physical activity. Her past work experience includes such jobs as a stitching machine operator in the boot and shoe industry and Interviewer and Aide with the Office of Economic Opportunity. Neither of these jobs require in excess of light physical activity and could be performed by this claimant. Therefore, she has the capacity to perform some of her prior or regular jobs. (Tr. 16-17).
The hearing examiner made the following specific findings:
1. Claimant meets the special earnings requirements for disability purposes through the date of this decision.
2. Claimant has diabetes mellitus but it has not resulted in complications of such severity and is not uncontrollable to such extent, that claimant would be precluded from performing substantial medical therapy.
3. The medical evidence reveals claimant has a diffuse goitre but the medical evidence does not establish that it has resulted in significant symptoms or could not be controlled with appropriate medical therapy.
4. There are no severe residuals of the surgery on claimant's left breast in September 1970. The mass in the right breast has not been demonstrated by medical evidence to significantly limit claimant's capacity for work activity.
5. The osteoarthropathy involving the right hip has not resulted in severe complications.
6. The climacteric or anxiety conditions are not so deepseated and of such severity as to preclude claimant from working.
7. Claimant retains the physical and mental capacity to engage in light or sedentary physical activities.
8. Claimant retains the physical and mental capacity to engage in her prior jobs of stitching machine operator (boot and shoe industry) and Aide and Interviewer for the Office of Economic Opportunity (government service). Neither of these jobs require in excess of light physical activity.
9. Claimant is not under a disability in that she was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months, at any time on or prior to the date of this decision. (Tr. 18).
Plaintiff's testimony regarding her work history was uncontroverted and was summarized by the hearing examiner as follows:
From 1952 to 1955 she operated a sewing machine at the International Shoe Company, Sikeston, Missouri, stitching shoe linings to parts of the shoe. She had her own tavern business one year in 1956. Later she worked about fourteen months as cook and waitress at the James Drug Store, Sikeston, Missouri. From March 1959 until July 1964 she worked as assembler at Dacus Manufacturing Company, Morehouse, Missouri, a company which manufactured coffee tables, book cases and end tables. She lost her job because the company went bankrupt. Her next job was with the Office of Economic Opportunity at North New Madrid, Missouri from July 1966 until December 1967 when they closed this center. She worked as an aide and interviewer. She has done no work since then. (Tr. 14 and 15).
*544 The record clearly establishes that plaintiff has had a diabetic condition since 1954 and has had numerous hospital admissions in connection with her failure to control her diabetes.
Plaintiff alleges, however, that her disability began in May 1968. On the 17th of that month she was admitted to Missouri Delta Community Hospital from the emergency room in diabetic acidosis, with nausea and vomiting. (Tr. 42, 132). She was discharged May 24, 1968, on which date her regular physician, Dr. A. P. Sargent, who had been treating her since 1956 (Tr. 118), dictated into his report that
[Plaintiff] has progressed satisfactorily on medical regime in the hospital, however, she is not in good Insulin balance as yet, but never has been. This patient is an old diabetic, possibly 20 years duration, with a rather brittle type, who vasolates (sic) from 58 fasting blood sugar yesterday to 276 fasting blood sugar this morning . . . Should further difficulty ensue, this patient will be seen in the office or the emergency room, as the case requires.
On November 15, 1968, Dr. J. H. Keim reported to the Social Security Administration that he had seen plaintiff periodically since 1954, that her chief complaint is diabetes, that he considered her to be a "rather brittle diabetic", and that she had apparently not been too meticulous in the care of the diabetes. His last examination of her was on November 13, 1968, when his impression of her was that she was suffering from diabetes mellitus-brittle. Prior to this visit he had not seen her since May 1966. (Tr. 113).
On December 3, 1968, Dr. A. P. Sargent reported to the Social Security Administration that he had been treating plaintiff since 1956 for control of her diabetes, that she had been hospitalized the previous May 6 in diabetic acidosis, that he had seen her three times since then, that he examined her on December 2, 1968, and found that her diabetes was under fair control. Dr. Sargent concluded that plaintiff had "gradually progressed to the state where she is unable to perform the usual work that she has been accustomed to and is trained to do." (Tr. 118).
Dr. H. B. Throgmorton submitted a medical report of his examination of plaintiff to the Missouri Division of Welfare, dated September 24, 1969 (Tr. 141-142), wherein he diagnosed diabetes, and stated that she should see her doctor more often and that she is "probably not able to control diabetes." He examined her again on February 17, 1970, diagnosed "diabetes  hard to control" and "moderate hypertension" and concluded that patient was permanently disabled. (Tr. 140). On November 11, 1969, Dr. Sargent reported that plaintiff "is a brittle type diabetic and the blood sugar will vary from 40 to 340 in less than twenty-four hours, on a diet that she has been on for weeks. It is my opinion that this individual will never be able to go back to full time work again." (Tr. 119). After an examination of plaintiff on June 12, 1970, he reported on June 16 that plaintiff
was complaining of headaches and having felt bad for the past week. Urinalysis revealed a four plus sugar so that her diabetes is obviously out of control. Her hemoglobin was 15 grams, so she is not anemic. At the present time she is taking 28 units of NPH insulin daily. She is capable and knows how to test her urine at home so she is able to vary her insulin dosage as she finds necessary. However, with brittle diabetics the patient is not always able to guage the insulin dosage as well as they should and they will have sudden elavation (sic) of blood sugar without any real good reason. At other times the blood sugar will fall to a perilously low level and the patient will become unconscious before they (sic) are aware of the effect. This has made it so that it is impossible for this woman to do very strenuous work. Her education is such that she is not able to do office *545 work or less strenuous type of work. (Tr. 120).
On April 19, 1971, Dr. Sargent reported that "[w]hile most people are able to regulate their diabetes fairly well with insulin, this patient's educational background and environmental background is such that it seems almost impossible for this woman to adjust herself and meet the conditions necessary to control her diabetes." (Tr. 122).
On September 20, 1970, plaintiff was admitted to Missouri Delta Community Hospital for the purpose of removing a tumor from her left breast. Dr. Sargent, the treating physician, commented on her diabetes in his report thus:
[Following the operation] she had considerable difficulty regulating her diabetes. She has always been a brittle diabetic and has been rather difficult to regulate anyway, however, at the present time she has her diabetes in usual state of balance and she is feeling well . . . This patient has had diabetes long enough that she changes her own Insulin from time to time with change in the urine findings, and seems to get along fairly well. Occasionally, however, she has periods when the diabetes seems to become rather rampant and she needs to enter the hospital.
By report dated May 14, 1970, Dr. Herbert Jones reported to the Missouri Department of Public Health and Welfare that, after his examination, he diagnosed:
1) Diabetes Mellitus, Juvenile Type, Insulin Sensitive.
a) Autonomic Neuropathy.
1) Postural Hypotension.
2) Occasional Nocturnal Diarrhea.
b) Diabetic Neuralgia of Feet and Legs.
II) Chronic Anxiety Reaction With Probable Episodic Hyperventilation.
He commented as follows:
The patient's diabetes at the present appears under less than optimal control. Some brittle diabetics, however, do run wide sugar swings and this does, at times, pose a serious therapeutic difficulty. The patient's greatest disability at the present appears to be her orthostatic hypotension which is significant. Propranolone might be helpful in reducing this orthostatic drop in blood pressure. The patient will continue to require close monitoring. She should also continue to be able to perform light physical labor. She should be re-evaluated in one year. (Tr. 145).
Dr. H. A. Poe, submitted a report dated April 17, 1971, wherein he stated that plaintiff was in his office June 24, 1969, and was checked for fasting blood sugar which was high. (Tr. 147).
Dr. Maynard L. Sisler in his report dated August 18, 1971, to the Missouri Vocational Rehabilitation Agency described and commented upon the results of the physical examination carried out in his office on August 11, 1971. His diagnosis is as follows:
1. Diabetes Mellitus, brittle, with peripheral neuropathy and peripheral vascular insufficiency.
2. Diffuse goitre, quite possibly toxic, and quite possibly responsible for the brittleness of her diabetes.
3. Mass in the right breast.
4. Osteoarthropathy involving the right hip.
5. Climacteric. (Tr. 217).
He commented upon her functional limitations as follows:
The claimant's functional limitations would include an inability to stand for any prolonged period of time, to bend, stoop, carry, push, pull excessively. She could not be trusted to drive a vehicle because of frequency of hypoglycemic reactions. She could perform sedentary and perhaps light activity on sustained basis. Ibid.

*546 Plaintiff responded to Dr. Sisler's report in a written statement dated September 3, 1971, thus:
I feel that I would be unable to do any kind of work, even if I was sitting down all the time, because I get the diabetic symptoms (nausea, vertigo, numbness, sweating, etc.) at any time (regardless of my activity), and I sometimes get them several times a day. When these attacks come on, I have to eat immediately or become extremely ill.
When my condition becomes worse, as it frequently does, my vision becomes impaired, my head feels like it is swelling, and my nervous tension increases to where I am hardly able to stand anyone around me, even my family.
Since I had breast surgery in September, 1970, I have been unable to be alone because of the frequency and severity of the episodes. Although I have my own home, I have not lived there, but have stayed with my mother, so someone can watch me at all times. My mother & sister and their families have someone with me all the time.
I feel that my long-standing diabetes condition, with the frequency and the severity of the episodes, does not permit me to do any kind of work which would place me in a situation where I could not receive immediate care for my condition when it became necessary. (Tr. 226-227).
By report dated June 25, 1970, Mary W. Thompson, Welfare Assistant for the Missouri Department of Public Health, reported to the Social Security Administration that the druggist for whom plaintiff worked and a bank cashier, both of whom had known plaintiff for several years, described plaintiff as a "good worker until her health made it impossible for her to continue to work." (Tr. 138).
The only evidence of record regarding plaintiff's condition, as it existed after May 1968, which supports the hearing examiner's finding that plaintiff is able to perform "sedentary or light physical activity" is found in the conclusions of Drs. Jones and Sisler wherein the former concluded that "[s]he should also continue to be able to perform light physical labor" (Tr. 145) and the latter concluded that "[s]he could perform sedentary and perhaps light activity on sustained basis." (Emphasis added). (Tr. 217). Also, plaintiff testified that on occasion she was able to do light housework. (Tr. 51). Evidence that plaintiff is able to engage in light housekeeping or engage in sedentary or light activity does not constitute substantial evidence that plaintiff can engage in substantial gainful activity. Davidson v. Gardner, 370 F.2d 803, 824 (6th Cir. 1966); Riemer v. Secretary of Department of Health, Education and Welfare, 274 F.Supp. 478, 481 (D.N.H.1966); Ihnen v. Gardner, 253 F.Supp. 541, 547 (D.S.D.1966). There is no substantial evidence of record that, in her post-May 1968 diabetic condition, plaintiff is able to engage in her pre-September 1967 employment activities. Furthermore, Dr. Sisler's statement that plaintiff should not be trusted to drive a vehicle but yet could engage in sedentary and "perhaps" light activity on a sustained basis is both of such an inconsistent and speculative nature that it does not provide the hearing examiner with substantial evidence of her physical ability. See Staskel v. Gardner, 274 F. Supp. 861, 863 (E.D.Pa.1967).
Defendant found that plaintiff's diabetic condition "is not uncontrollable," (Tr. 18), and therefore is remediable and not a disabling impairment. Section 404.1507 of Title 20, Code of Federal Regulations states in part:
An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless *547 continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment.
While there is considerable comment of record upon the failure of plaintiff to adhere rigidly to her diet so to control her condition, all such comment relates to the period before May 1968, with one possible exception. Dr. Keim's November 15, 1968, comment that she had apparently not been too meticulous in the care of her diabetes (Tr. 113), is imprecise as to what period of time he is referring (pre or post May 1968). It is further qualified with a strong opinion that "it is very difficult to keep her diabetes regulated because of these episodes of apparent hypoglycemia in which she eats something sweet and her blood sugar then returns to the other extreme of hyperglycemia." Ibid. Such comments cannot be considered substantial evidence of a remediable condition. Rather, plaintiff has adequately provided the record with substantial evidence that her post-May 1968 diabetic condition was and is sufficiently uncontrollable by her to preclude her from engaging in substantial gainful activity of any kind. E. g., Tr. 122.
In conclusion the Court finds no substantial evidence of record that plaintiff's post-May 1968 diabetic condition is either remediable within the provisions of 20 C.F.R. § 404.1507 or does not prevent plaintiff from performing any substantial gainful activity. On the contrary, the entire record, relating to both her pre and post May 1968 diabetic states provides substantial evidence that since May 1968 plaintiff was unable to engage in any substantial gainful activity by reason of her diabetic mellitusbrittle condition with its periods of hypoglycemia and insulin reaction.
Therefore, the final decision of the Secretary will be reversed and the Secretary directed to award plaintiff such disability benefits for which plaintiff applied.