Ruth ANDERSON, Plaintiff,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Defendant.

No. CA 80-2159-T.

United States District Court,
D. Massachusetts.

Jan. 16, 1984.

Sarah F. Anderson, John J. Ford, Neighborhood Legal Services, Inc., Lynn, Mass., for plaintiff.

Evan Slavitt, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

In this action, plaintiff seeks review of a final decision by the Secretary of Health and Human Services ("the Secretary") denying plaintiff's application for disability benefits under the Social Security Act, 42 U.S.C. § 401 *et seq.*, (1983) ("the Act"). Section 205(g) of the Act, 42 U.S.C. § 405(g) (1983), provides for judicial review

of final decisions of the Secretary.[1] This case is presently before the court on cross motions for summary judgment.

### I.

Plaintiff originally filed an application for disability insurance benefits on January 3, 1979. She alleged that she became disabled on December 15, 1978, due to the residual effects of surgery to remove a brain tumor. After conducting a hearing, the Administrative Law Judge ("ALJ") issued a decision on March 28, 1980, denying plaintiff benefits. The Appeals Council affirmed the ALJ's decision and plaintiff appealed to this court.

On November 16, 1981, this court remanded the action to the Secretary for a clarification of the reasons behind the denial of plaintiff's claim and a specification of the evidence supporting the denial. On remand, the ALJ held a supplemental hearing on the issue of plaintiff's alleged disability. In a decision dated May 20, 1982, the ALJ, incorporating by reference his prior decision, again found that plaintiff was not disabled within the meaning of the Act. The Appeals Council affirmed on June 30, 1982.

Plaintiff raises two objections to the ALJ's decision. First, she argues that the ALJ failed to consider the cumulative effect of her exertional and nonexertional impairments. Second, she argues that the ALJ's decision is not supported by substantial evidence.

### II.

Plaintiff's medical problems began in 1969 when doctors discovered that she had a brain tumor. This tumor was surgically

---

1. In pertinent part section 205 provides:

 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action.... brought in the district court of the United States.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....

removed. Tr. 9.[2] Although there was no evidence that plaintiff's surgery was improperly performed, her medical problems persisted.[3] During the following year, plaintiff suffered several convulsive seizures and experienced episodes of phlebitis. Plaintiff testified that she has not had a full convulsive seizure since 1973. Tr. 9. Plaintiff did, however, experience seizure warnings at least through 1978. Tr. 169. Plaintiff additionally has pain in her right side and a lack of strength in her right hand. She can raise her right arm only to shoulder level without pain. Tr. 9.

In addition to her physical ailments plaintiff also had various psychological problems. During the year following her surgery, plaintiff's husband left her. Tr. 13. In 1971, plaintiff was hospitalized twice suffering from depressive neurosis. Tr. 120–21.

In his decision[4] the ALJ determined that plaintiff had the following impairments: "Chronic, reactive, depressive state, secondary to sequalae of brain tumor surgery and marital maladjustment...." Tr. 13. He also found that plaintiff's "seizure impairment" had not been "of such significant severity at any time since January 3, 1979 ... so as to be relevant to the claim of disability." *Id.* Finally, the ALJ concluded that plaintiff's symptoms of pain did not constitute a disability.

■ The ALJ implicitly found that plaintiff's ailments met the requirements of a "severe impairment" under 20 C.F.R. 416.-920(c) (1982).[5] Although he did not cite the relevant sections of the regulations, he found that plaintiff was either capable of doing the kind of work that she had done in the past, *see* 20 C.F.R. § 416.920(e), or, that plaintiff was capable of doing other work, *see* 20 C.F.R. § 416.920(f).[6]

After determining that plaintiff had a severe impairment, the ALJ went on to consider the vocational factors outlined in Rule 201.22, 20 C.F.R. pt. 404, subpt. P, app. 2 (1982) ("the GRID"). He found that plaintiff was "a younger individual" with a high school education and previous work experience that provided some transferable skills. Applying Rule 201.22 to plaintiff's characteristics, the ALJ concluded that plaintiff was not disabled. *See id.,* Rule 201.22.

### III.

Courts apply two different standards of review to appeals from administrative deni-

---

42 U.S.C. § 405(g) (1983).

**2.** All references to the transcript filed by the Secretary will be designated "Tr."

**3.** The post-operative x-ray report showed: "Multiple surgical defects ... present over the parasagittal and right parietal area. Metallic clips are also present. No abnormality in the remainder of the skull can be seen...." Tr. 115.

**4.** Because the ALJ incorporated by reference his March 1980 decision into his May 1982 decision, the two decisions will be treated as one.

**5.** The ALJ acknowledged that "claimant's impairments do impose a restriction on her functional capacity...." Tr. 12. Furthermore, given that the ALJ considered plaintiff's age, education and work experience, he must have first concluded that plaintiff had a severe impairment within the meaning of the Act. This follows from section 416.920 of the Social Security regulations, which describes the steps that the Social Security Administration ("the Administration") takes in evaluating a disability. Under section 416.920(c) if an individual does not have

a severe impairment the Administration "will not consider ... age, education, and work experience." 20 C.F.R. § 416.920(c) (1982).

**6.** The two sections are mutually exclusive. Because the ALJ did not cite either section it is not clear upon which section he relied. Section 416.920(e) provides, in pertinent part:

If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment, we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. § 416.920(e) (1982).

Section 416.920(f) provides, in pertinent part:

If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. § 416.920(f) (1982).

als of Social Security benefits. When considering any factual matters, the decision of the ALJ is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[7] This deferential standard, however, does not apply to the Secretary's conclusions of law. *See Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. 1981).

█ Plaintiff's argument that the ALJ failed to consider the cumulative effect of plaintiff's exertional and nonexertional impairments, challenges one of the ALJ's conclusions of law. This court must, therefore, exercise the less deferential standard of review in determining whether the ALJ applied the proper legal standards in plaintiff's case.

The regulations recognize that claims of individuals who are suffering from exertional and nonexertional ailments should be considered differently from claims of individuals who have solely physical ailments. 20 C.F.R. pt., 404, subpt. P, app. 2, § 200.-00(e)(2) (1982).[8] Specifically, the regulations direct that:

> where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combi-

nations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations....

*Id.*

█ The Secretary argues that the ALJ first considered plaintiff's nonexertional impairments and found that they were not of such severity as to significantly reduce her residual functional capacity. The Secretary claims that the ALJ then applied the GRID to plaintiff's exertional impairments. Assuming that the Secretary has correctly interpreted the ALJ's analysis, the ALJ nonetheless analyzed plaintiff's impairments incorrectly. The regulations require the Secretary to consider the exertional impairment first, and, if a finding of disabled is not possible, then the ALJ is to consider the combined effects of the exertional and nonexertional impairments. *Id.* In this case the ALJ never considered the combined effect of plaintiff's impairments. Instead, he completely ignored the second step in the analysis and applied the GRID to the exertional impairments alone.

Furthermore, when considering a case involving a combination of impairments, "the Grid will offer only guidance—it will not determine 'disability'...." *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 4 (1st Cir.1982). In the instant case, the ALJ relied conclusively on the GRID to determine the issue of disability. Based upon the ALJ's failure to apply the correct legal standard, the Secretary's decision must be reversed.

Plaintiff asserts an additional ground for reversing the decision of the Secretary,

---

7. Section 405(g) provides, in pertinent part:
 The findings of the Secretary as to any *fact*, if supported by substantial evidence, shall be conclusive....
 42 U.S.C. § 405(g) (emphasis added).

8. Section 200.00(e) provides, in pertinent part:
 Since the rules are predicated on an individual's having an impairment which manifests

itself by limitations in meeting the strength requirements of jobs, they may not be applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental ... impairments....
20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1982).

claiming that there is no evidence in the record to support the denial of benefits. In reviewing the ALJ's decision as to the sufficiency of the evidence, this court is bound by the findings of the Secretary that are supported by substantial evidence. *See* 42 U.S.C. § 405(g). In defining the substantial evidence test, the First Circuit has stated:

We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support h[er] conclusion.

*Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir. 1981). In this court's view there is not adequate evidence to support the Secretary's decision in this case.

The relevant evidence in the record consists of reports from three hospitals, five doctors and testimony by plaintiff. Dr. Robert Van Wittenberghe, a psychiatrist, performed an independent consultative psychiatric examination on plaintiff in December 1979. Dr. Van Wittenberghe completed a detailed evaluation as well as a "Supplemental Questionnaire as to Residual Functional Capacity." In his report, Dr. Van Wittenberghe stated that plaintiff was in a "[c]hronic, reactive, depressive state." Tr. 156. He concluded his evaluation by stating that "once her depression is lifted she should be able to work part time." Tr. 156.

■ The ALJ discussed Dr. Van Wittenberghe's report in both his decisions. It appears that the ALJ relied solely upon the Supplemental Questionnaire completed by the doctor, and not on the more detailed evaluation. To the extent that the ALJ did so, he was in error. Other courts have found, and this court agrees, that such forms are entitled to little weight in the evaluation of disability, and, do not alone, constitute substantial evidence. *See, e.g., Camp v. Schweiker,* 643 F.2d 1325, 1333–34 (8th Cir.1981); *Gilliam v. Califano,* 620 F.2d 691, 693 (8th Cir.1980).

Furthermore, Dr. Van Wittenberghe's Supplemental Questionnaire cannot be read without reference to the evaluation. Dr. Van Wittenberghe incorporated his evaluation by reference when he stated on the questionnaire, "See psychiatric evaluation." Tr. 158. If both the evaluation and the questionnaire are read together it is clear that Dr. Van Wittenberghe considered plaintiff to be disabled.

The ALJ also considered the report of Dr. Leland Bradbard, a clinical psychologist who performed psychological tests on plaintiff. In the summary of his report, Dr. Bradbard concluded:

Mrs. Anderson ... is functioning in the dull normal range. Brain damage testing shows that there is [sic] mild to moderate difficulties which can be attributed to brain damage, however, there is an intense psychological overlay which causes these problems to be quite severe. Tr. 149.

In no portion of Dr. Bradbard's report does he state that plaintiff is not disabled. The ALJ relied selectively on isolated statements in the report to support his conclusion. He did not consider, however, that Dr. Bradbard also found that plaintiff had serious difficulties handling tasks involving simple one and two step instructions:

When instructions are given her anxiety level goes up quickly because she is *afraid* she will forget, and because of the fear she does forget. This ability is poor.

Tr. 150 (emphasis in original).

■ It is not reasonable to rely arbitrarily on portions of a medical report while simultaneously ignoring the spirit of the report. *See Cassiday v. Schweiker,* 663 F.2d 745, 748 (7th Cir.1981) ("The difficulty with the Secretary's position is that it allows the agency to isolate parts of what is essentially a continuous medical record and then apply tie-breaker rules to each of the constituent elements.") Taken as a whole, Dr. Bradbard's report cannot be read as supporting the ALJ's decision that plaintiff is able to engage in semi-skilled or skilled work.

The ALJ also had before him the report of Dr. Stephen L. Wagner, plaintiff's treating neurologist. Dr. Wagner concluded in his report dated August 1978, that plaintiff "is unable to carry out normal mental and physical activities because of the subjective 'spaced-out' feeling." Tr. 139.

■ The ALJ did not give any weight to Dr. Wagner's opinion. The ALJ may not arbitrarily ignore the uncontroverted report of an examining physician. *See Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979). In her brief, the Secretary argues that Dr. Wagner's conclusion is contradicted by the fact that plaintiff was working in a CETA job at the time of Dr. Wagner's examination.[9]

The evidence concerning the CETA job supports rather than contradicts the doctor's report. The record shows that the CETA job was particularly undemanding, involving nothing more than checking to see that the correct information had been filled out on data processing forms. Tr. 177. Despite the undemanding nature of the job, the record shows that the job placed a severe physical and mental strain on plaintiff. Tr. 92, 95, 178–80.

■ Dr. J. Cohen completed a Residual Functional Capacity Questionnaire on March 13, 1979. Tr. 151. There is no evidence as to whether Dr. Cohen examined plaintiff or as to how he made his evaluations for the form. At a hearing before this court on December 5, 1983, neither plaintiff nor defendant was able to identify at whose request Dr. Cohen filled out the questionnaire. The ALJ did not refer to this questionnaire in either of his decisions. It is, therefore, unclear how much weight he accorded the questionnaire. As such forms are entitled to little weight and do not constitute substantial evidence, the decision to deny plaintiff disability payments cannot be based on Dr. Cohen's questionnaire alone. *See Camp v. Schweiker*, 643 F.2d at 1333–34; *Gilliam v. Califano*, 620 F.2d at 693.

The record also contains a report by Dr. Alvin Schwartz, a consultative neurologist. Contrary to the ALJ's assertion, *see* Tr. 165, Dr. Schwartz does not suggest that plaintiff is able to perform sedentary work. Rather, his report contains inconclusive contradictory observations. For example, he describes plaintiff as "alert" in one sentence and then reports that plaintiff "has a rather vague vacant look about her, is very hesitant in speech [and]…is quite anxious." Tr. 143–44.

■ Apparently Dr. Schwartz was not clear as to the source of plaintiff's ailments. He noted that he could not be certain whether plaintiff's seizure warnings were caused by psychological or physiological factors. In his section entitled "Recommendation," the doctor reported that an EEG had been ordered.[10] The EEG is not, however, part of the record.[11] Given its internal contradictions and recommendation for further testing, Dr. Schwartz's report cannot reasonably be read to imply any position on plaintiff's ability to perform sedentary work and, thus, cannot constitute substantial evidence supporting the ALJ's decision. *See Staskel v. Gardner*, 274 F.Supp. 861, 863 (E.D.Pa. 1967) ("a finding based upon fragmentary, cryptic and inconsistent reports of the history of the illness … can hardly be said to be based upon 'substantial evidence.' ")

9. In his decision the ALJ states that plaintiff worked from January 15, 1978 through September 1978. Tr. 166. In the Disability Report that plaintiff submitted, however, she reports that she worked from January 1978 through December 1978. Tr. 92.

10. The notation that an EEG had been ordered suggests that the doctor had not made a conclusive diagnosis at the time of the report.

11. Whether plaintiff's seizure warnings are caused by psychological or physiological factors affects only her diagnosis and not the severity of her impairment. *See Strayhorn v. Califano*, 470 F.Supp. 1293, 1296–97 (E.D.Ark.1979).

In reaching his decision, the ALJ improperly discounted certain medical evidence and distorted the implication of other evidence. There is no substantial medical evidence that justifies the Secretary's conclusion that plaintiff is able to perform skilled or semi-skilled sedentary work.

 The only other evidence that the ALJ appears to have relied upon is plaintiff's testimony that she was capable of performing light housework. Evidence of such ability, however, does not constitute substantial evidence of ability to engage in substantial gainful activity. *See Goodwin v. Richardson,* 357 F.Supp. 540, 546 (E.D. Mo.1973).

 Given the overwhelming evidence of the serious nature of plaintiff's combination of exertional and nonexertional impairments, the Secretary's finding that plaintiff was capable of performing semi-skilled or skilled sedentary work is not supported by substantial evidence. Under these circumstances, the court is compelled to reverse the Secretary's decision.

 The only question remaining is whether this court should again remand the case for further proceedings or whether a final determination may be made at this time from the administrative record. *See* 42 U.S.C. § 405(g).[12] The only finding that can reasonably be made from the record is that plaintiff was unable to engage in substantial gainful activity because of her impairments. If the appropriate analysis had been applied, the ALJ could have reached no other conclusion. *See Thomas v. Celebrezze,* 331 F.2d 541, 546 (4th Cir.1964) (reversing the decision of the Secretary without remanding). Plaintiff's motion for summary judgment will, therefore, be allowed and the Secretary will be ordered to calculate benefits due plaintiff for her period of disability beginning January 1979.

**12.** Section 405(g) provides, in pertinent part: The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.... 42 U.S.C. § 405(g).