**Rosie L. PAGE, Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, United States of America, Appellee.**

**No. 19586.**

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1963.

---

Sidney E. Dawson, Dallas, Tex., for appellant.

Barefoot Sanders, U. S. Atty., B. H. Timmins, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before BROWN and BELL, Circuit Judges, and SIMPSON, District Judge.

JOHN R. BROWN, Circuit Judge.

This appeal tests the correctness of the administrative determination that Claimant was not disabled. 42 U.S.C.A. §§ 416(i), 423. The District Court sustained the Appeals Council which in turn reversed a favorable award of the Hearing Examiner. We disagree and consequently reverse and remand for further administrative proceedings.

The Claimant was a 56-year-old woman with a ninth grade education. Except for her duties as mother and housekeeper, her work record was rather limited. She had about 1952 performed some tasks in connection with inspecting military ammunition. In 1955–56 she was a packer in a wholesale manufacturing establishment. Her last employment was in a laundry. After approximately six months she was forced to quit this work in early 1959 because of nervousness and pain which made her unable to work. One effort in 1959 to resume similar work in a laundry was unsuccessful as she was, she stated, compelled to give this up after just a few days.

We later discuss in a summary way the various medical reports and findings. Were this just a question of resolving factual conflicts including the inevitable contradictions among medical experts, we would readily affirm this award. For our function is a limited one. We neither have, nor seek to exercise, any right to make credibility choices. The statute prescribes that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." 42 U.S.C.A. § 405(g).

But as we and others have pointed out [1] whether conclusions are sup-

---

1. Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591; Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916.

ported by substantial evidence as the statute prescribes must necessarily take into account the unusual nature of these administrative proceedings. One unusual aspect is the administrative appellate review. Thus, as permitted by statute and regulation, after the Hearing Examiner—who had heard and seen some of the witnesses in person—found disability to exist, the Appeals Council took the case for review on its own motion. In that process the record was considerably augmented by several posthearing medical examinations and reports conducted by consultants for the Department. The Appeals Council was scrupulous in advising Claimant of the addition of these materials and its purpose to consider them. But this itself demonstrates the unusual character of the proceeding since the statute and regulations contemplate that the Hearing Examiner's decision is not only subject to review, but is to be reviewed—more properly retried—on much new evidence. The sheer magnitude of that administrative burden necessitates that ordinarily this new evidence be in the form of written reports with no means available for explanation, testing, or elaboration through the traditional facility of oral testimony.[2]

■■ We emphasize this not because of any criticism of the legislative system established to cope with this staggering task. Rather, we do so to emphasize that where credibility choices of a nonroutine medical nature have a likely decisive significance, the record must afford some assurance on these factors. We must, first, be certain that the correct standards of evaluation are used. And next, where the issue is not reasonably susceptible of presentation and determination on the basis of mere written, formal reports, some adequate steps must be taken to adapt a procedure which will enable the trier of fact to determine the truth of the matter.

Claimant's principal complaints were those of extreme pain and stiffness. Stiffness began in the hands and in the neck and related areas. From 1959 on, so she said, this extended to her feet, knees and arms. Her husband and a daughter appearing for her on the hearing also testified at length about her condition and activities. Quite obviously the Examiner credited their factual recitation that since 1959 Claimant had not done any outside work at all, and only the very slightest work around her home. Any exertion produced intense nervousness and increased pain. She is unable to exert herself in any way and to relieve her nervousness and pain, regularly takes tranquilizers or similar drugs.

Dr. Rader, her treating osteopathic physician, diagnosed her condition as osteoarthritis involving the vertebral bodies of the cervix and upper three dorsals. He, as did all the others, found very significant rheumatoid arthritis of the fingers of both hands. The existence of this condition was clearly demonstrated on the X rays whereas those of the spine showed only minimal arthritic changes. On physical examination, however, she was able to rotate the head from side to side only through a small arc. Examination by a medical consultant on the Hearing Examiner's request revealed essentially the same thing. This doctor reported that the Claimant " * * * walks very slowly, bent forward 10 degrees * * *. Rotation of her neck is voluntarily limited due to production of pain. She resists having her shoulders lifted above the horizontal * * *" and "* * * she walks with the kind assistance of relatives * * *."

2. The extensive hearings held in December 1959 on the administration of Social Security disability insurance program likewise indicate that with the enormity of this task, a rather elaborate system of medical consultants is established for use by Hearing Examiners and members of the Appeals Council. Whether the trier of fact has utilized such consultants or the extent to which such use may have influenced fact conclusions does not ordinarily appear in the official decision of the Examiner or the Council. See Hearing Before the Subcommittee on the Administration of the Social Security Laws; Committee on Ways and Means House of Representatives, 86th Cong., Government Printing Office No. 48472, 1960.

In connection with heart studies, he reported a "Masters test was attempted but she was unable to climb the steps because of the muscular and back pain." This consultant's diagnosis was, among other things, "hypertrophic arthritis" of some of the fingers of both hands and, more significant, "severe anxiety state with conversion hysteria."

On the record before the Examiner, not a single witness, lay or medical, undertook even faintly to suggest that Claimant was able to do anything. Her objective behavior and actions, testified to by persons having exceptional opportunity for observation and whose inclination to give testimony of doubtful reliability was discounted by the apparent crediting of it by the Examiner, portrays the picture of a woman unable to do anything. Two doctors categorically expressed positive opinions of inability to work, and the consultant's report, viewed most unfavorably to Claimant, stated nothing more than the absence of objective evidence to support complaints of pain in areas other than the hands.

The Examiner, on this record, concluded that Claimant was disabled within the stringent standard of the Act. Apart from the uncontradicted evidence as to Claimant's fingers and her inability to use her hands or hold onto any-

thing, his decision was based essentially on the conclusion that she was suffering from a "psychosomatic neurosis" or "psychoneurotic disorders." Consequently, so he held, despite the fact that the "medical examiner found no organic basis" for these conditions and "neurologically the claimant was normal" Claimant's "pain, stiffness and restrictions of inability are real to her." [3]

The Appeals Council, on its own motion, took the case for review. Two additional examinations were made by medical consultants at the expense and request of the Agency. One was an orthopedic surgeon, the other a neurological surgeon. The orthopedist's report was essentially negative as to X rays and objective findings. In the physical examination, motion of Claimant's head and other extremities were limited. Because of asserted pain, Claimant resisted many of the manipulations. This doctor's impression was that Claimant "had a marked psychogenic overlay of her symptoms" which led him to believe that there was not "full cooperation" between the doctor and Claimant and that rather "there was a great deal of hostility" based on her belief that she was being deprived of disability compensation. The neurosurgeon's report likewise reflected the complaints of pain and tenderness in the clinical manipulations. Any

3. The Examiner's decision states:

"The hearing examiner has given careful consideration to all the pertinent evidence in this case and finds that the claimant has established that she has an impairment of sufficient severity as to have prevented her from engaging in any substantial gainful activity from the date alleged and continuing, without interruption, to and including the date she filed her application.

"In psychosomatic neuroses, emotional tensions and conflicts produce anxiety which may disrupt the autonomic (involuntary) regulation of the body with resulting disturbance of certain systems. If a chronic reaction persists it may lead to actual structural change. In psychoneurotic disorders there are no gross falsifications of reality such as observed in psychoses in the form of delusions or hallucinations. Bodily or mental symp-

toms, however, may preoccupy the individual to such an extent as to approximate delusions or hallucinations. There may be only slight incapacity or it may be so severe as to prevent the performance of ordinary functions.

"The medical examiner found no organic basis for claimant's somatic troubles. The lumbar spine had no abnormalities other than possible calcification of the abdominal aorta. The shoulder joint was normal and there were no abnormalities of the cervical spine vertebrae. Neurologically the claimant was normal, however, the claimant's pain, stiffness and restrictions of mobility are real to her. The evidence all leads to the conclusion that the impairment is sufficiently deep-seated and of long-continued and indefinite duration and of sufficient severity as to preclude all substantial gainful activity."

"movement of the neck and back was said to aggravate and increase the pain." Likewise, "movement of the feet, legs, fingers, etc. against resistance were all very weak." This doctor concluded with this "Impression: Deferred. This patient obviously has some psychoneurotic tendency which apparently has been quite severe, but I do not believe there is any true psychosis. However I would have to leave this up to a psychiatric evaluation * * *." It is pertinent to state here that no psychiatric examination was thereafter had.

In its decision the Appeals Council first recognized that "the claimant has some arthritis of the fingers which causes the grip to be somewhat diminished." [4] Next the Council stated that "she has minimal osteoarthritis of the spine and some limitation of motion as a result thereof." [5] And at this point the Council then proceeded to dispose of the merits of the case on either one or both of two grounds, each of which we consider erroneous. The first is found in these words of the Council:

"The claimant's principal complaints are those of pain. In such an instance, where the allegations of pain are inconsistent with or out of proportion to the *objective clinical and laboratory findings,* the Appeals Council of necessity must give little weight to these allegations in the ultimate finding."

The second error was adopting in so many words and by direct citation—presumably as the legal standard to be followed under this social welfare legisla-tion—the now famous aphorism of Judge Hand in Theberge v. United States, 2 Cir., 1937, 87 F.2d 697:

"A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities; * * *. The only work available to the insured must do more than hurt, it must substantially aggravate his malady. * * *"

■ Advanced often as it is in the Secretary's brief in cases before us, it is isolated here by the Council as a specific basis for its decision. But as we have in rejecting it as an advocate's argument to support a decision, we reject it equally as a basis for decision.[6] This notion that pain must be endured, that pain, no matter how severe or overpowering, is not disabling unless it will "substantially aggravate" a condition is "contrary to the standard announced in" cases from this and other Circuits since "the purpose of much social security legislation" including this Act, "is to ameliorate some of these rigors that life imposes." Butler v. Flemming, 5 Cir., 1961, 288 F. 2d 591, 595; Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648.

■ We regard as equally erroneous the principle reflected in the excerpt quoted above that where not shown by objective clinical and laboratory findings, the Appeals Council "of necessity must give little weight to these allegations" of pain "in the ultimate finding."

■ If pain is real to the patient and as such results in that person being

---

4. Not a single doctor undertook to contradict the report of the treating physicians and the Claimant's lay witnesses that with this marked arthritis of the fingers of both hands, she could not use her hands efficiently or hold onto anything with any dependability.

5. In the concluding paragraphs of the decision, the Council elaborated on this somewhat:

"Whether the claimant's complaints are on an organic or subjective basis, the weight of the evidence shows that at the time of filing application her overall health was such that she was precluded only from engaging in work requiring possibly extensive lifting or bending but not from any other type of substantial gainful activity. It may well be that the claimant is not able to do work requiring much lifting or bending."

6. The Appeals Council also cited and quoted from Adams v. Flemming, 2 Cir., 1960, 276 F.2d 901, at 904. Nothing in that case even remotely supports this discredited Theberge notion that actual pain may not be totally disabling under this statute.

physically unable to engage in any gainful occupations suited to his training and experience, and this results from "any medically determinable physical or mental impairment" the disability entitles the person to the statutory benefits even though the cause of such pain cannot be demonstrated by "objective clinical and laboratory findings." We are dealing with such a case here. This is not the simple case of a person complaining of pain for which none of the doctors can find any basis, either organic or neurotic. Here we are dealing with a person about whom there is almost substantial agreement that she is disabled in fact by reason of psychosomatic or psychoneurotic involvements.

■ The statute does require that the disabling condition result from a "medically determinable physical or mental impairment." But it does not restrict medical investigation, examination and opinion to only those things described as "objective clinical" or "laboratory findings." Where the medical evidence of record before the trier substantially indicates, as it does here, that the ascertainment of the existence of actual disability depends upon determining the truth and reliability of complaints of subjective pain or the medical significance of such complaints once credited, the trier of the fact—whether Examiner or Appeals Council—has a duty to pass on that issue. The trier cannot abdicate this difficult role by leaving it to that very limited field of medical science (if there is such) that deals alone with objective symptoms and demonstrable laboratory analysis.

■ The use by Congress of the terms "physical or mental" impairment is more than enough proof to indicate that in this contemporary legislation Congress knew about the existence and work of that branch of medical science which deals with the aberrations of the human mind and emotions. It was aware that this phase of medicine often finds scientific basis for the existence of real and distressing, disabling pain unaccompanied by even the slightest demonstrable organic defect. In rejecting the idea that pain genuinely held, felt and experienced has to be substantiated objectively to satisfy the statutory standard of a "medically determinable physical or mental impairment," we have just recently said: "But modern medicine is neither so scientific nor so helpless today that it either does, or must, evaluate only objective factors." Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648.

■ The Appeals Council—the body which finally resolved the critical issues —quite obviously was influenced by two factors which we regard as erroneous. As a result there has been no real determination by the trier either as to the existence or the nature and extent, of disability flowing from psychosomatic or psychoneurotic causes. Consequently, the case must be reversed and remanded for further proceedings before the administrative agency. We do not undertake to blueprint the further hearings, but it is appropriate to state that the present record may be used with the parties free to supplement it, as they undoubtedly will, by other and further evidence, written or oral. We think also that it should result in an entirely new decision, rather than to put it in the form of hearings to determine whether the prior decision should be sustained.[7]

Reversed and remanded.

---

7. We should also emphasize that with the limited tools available to us from this sketchy record, we have necessarily used terms such as "psychosomatic" or "psychoneurotic" in a very loose and colloquial way. On the further proceedings, the widest range should be allowed to assure full development of the medical truth without any technical significance being attributed to the terms we have employed to distinguish medically recognized conditions which are, and are not, organic in nature.