**George W. COONEY, Plaintiff,**

v.

**Robert H. FINCH, Secretary, Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 68–721.**

United States District Court
W. D. Pennsylvania.

June 23, 1969.

Thomas A. Swope, Jr., Ebensburg, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

WEBER, District Judge.

This action was brought by plaintiff pursuant to § 205(g) of the Social Security Act, 42 U.S.C. 405(g) to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for a period of disability and disability benefits under §§ 216(i) and 223 of the Act. 42 U.S.C. §§ 416(i) and 423. The defendant has now moved for summary judgment.

The factual situation presented by the instant case is unusual in that the majority of the Social Security disability cases before this court deal with the physical impairments of miners or heavy laborers with little formal education who

are suffering from an assortment of ailments which severely limit their activity in occupations for which they are suited.

The present case deals with a 62 year old business executive who has graduated from high school, taken a course in accounting and has studied under a Certified Public Accountant. (Tr. 49, 51, and 52).

The applicant's first regular employment was as a Clerk with the Pennsylvania Electric Company, where he performed clerical functions in the company's accounting department, eventually becoming an Office Manager. (Tr. 52). Later the claimant was appointed Vice-President and General Manager of the Central Pennsylvania Gas Company, a position he held until 1956. (Tr. 58).

In 1956 he became an internal auditor of the National U. S. Radiator Corporation in Johnstown. (Tr. 59). In 1964 the Crane Company purchased the National U. S. Radiator Corporation and subsequent thereto plaintiff was re-assigned to the Chicago office, where he worked until July 2, 1965 when he allegedly was forced to relinquish his duties due to his physical condition. (Tr. 60, 61).

Since that time because of the pain, plaintiff has been unable to return to the executive position with the Crane Company, even though that position remains available to him.

Plaintiff's alleged disability arises out of an illness called osteitis pubis. This is defined as a sclerosing low grade inflammation about the symphysis pubis (junction at the front of the pelvis). This condition is usually associated with pain localized to the symphysis, low grade fever, and a definite point of tenderness to touch about the symphysis pubis.[1]

Plaintiff described his impairment as a severe pain and internal pressure similar to a hot iron in the pubic area. (Tr. 64). This pain causes him to become extremely tired and his only relief is when he is in a prone position. (Tr. 66). Because of the pain plaintiff is unable to sit in one position for more than three-quarters of an hour.

In support of his disability allegations, plaintiff had provided written medical reports of Drs. Lawrence F. Casale, George H. Hudson, J. E. Topper, and John J. Silensky. Each doctor has found "an acute tenderness over the symphysis pubis, (Dr. Casale, Tr. 137), a tenderness over the pubic region more marked to the left with a diagnosis of osteitis pubis, (Dr. Hudson, Tr. 146), a slight sclerosis in the margins of the symphysis pubis which may be due to arthrosis (Dr. Topper, Tr. 147), and a tenderness over the symphysis pubis with no swelling or masses present. (Dr. Silensky, Tr. 150).

The claimant has had x-ray therapy, cortisone injections and has orally taken cortisone and indocin with no results. No medication has provided plaintiff with relief and no recommendations for cure have been forthcoming.

Generally, the function of the hearing examiner is two-fold. That is, he must determine whether or not there exists a physical or emotional impairment which prevents the applicant from substantial gainful employment for a continuous period which has lasted or can be expected to last for not less than twelve months.

Generally, when osteitis pubis is present, an x-ray examination will reveal a woolly or moth-eaten appearance, characteristic of bone rarefaction, and will be objective evidence of the disease. No such objective or clinical findings have appeared in the record in this case.

The hearing examiner found that the medical testimony tends to show that plaintiff may now have or formerly had osteitis pubis but that the medical evidence does not support a contention that this condition is such that the claimant would be physically restricted to the extent that he could no longer perform any occupational activity. (Tr. 35, 36).

1. Lawyers' Medical Cyclopedia, Vol. 2, § 16.37, p. 539.

■ As our purpose on appeal is limited to determining whether the trier of fact's decision is supported by substantial evidence, we will uphold the government's contentions as to the question of plaintiff's physical disability.

The examiner's decision, however, "is not to deny the claimant's complaints of pain." (Tr. 36). The examiner concludes that plaintiff's pain is not so severe as to render him unable to engage in any substantial gainful activity.

The record contains evidence which would substantiate the examiner's decision as to plaintiff's physical disability, but it lacks evidence upon which a decision as to plaintiff's emotional complaints could be determined.

The triers of fact have adequately investigated the basis for any physical impairment but have left unanswered the issue of whether plaintiff has an emotional impairment which would render him disabled.

The Social Security Act regulations generally require an adequate psychiatric examination in determining the effect of a psychoneurosis. 20 C.F.R. 404.1519(c) (2) (ii). The Lee Hospital Report of February 2, 1968, states under the heading: "Impressions: Probable Psychoneurosis".

■ Where it appears that the plaintiff's subjective complaints of pain are out of proportion with the clinical findings, the trier of fact is obliged to inquire into this disparity. Goodwin v. Gardner, 250 F.Supp. 454 [D.C.Cal. 1966]. This is exactly the situation before us at this time. Plaintiff's clinical findings of osteitis pubis are minor, but his alleged pain as related by petitioner, his wife and doctors is so great that plaintiff cannot sit in one position for any length of time and easily becomes tired. The hearing examiner should have provided some psychiatric evaluations of plaintiff's subjective symptoms of pain.

The most recent doctor's report and hospital findings suggest that plaintiff's pain and disability may have psychological basis and advise neurological and psychological evaluations. (See Dr. William Davison's Report of 1–22–68, Tr. 183, and the Lee Hospital Report (Tr. 177).

■ The lack of a complete neurological and psychiatric examination and evaluation would render the Secretary's findings inadequate for this court to make any determination of an emotional disability.

"Where the medical evidence of record before the trier substantially indicates, as it does here, that the ascertainment of the existence of actual disability depends upon determining the truth and reliability of complaints of subjective pain or the medical significance of such complaints once credited, the trier of fact—whether Examiner or Appeals Council—has a duty to pass on that issue. The trier cannot abdicate this difficult role by leaving it to that very limited field of medical science (if there is such) that deals alone with objective symptoms and demonstrable laboratory analysis." (p. 763). Page v. Celebrezze 311 F.2d 757 [5th Cir., 1963].

On March 11, 1968, the plaintiff was given a psychological examination by Murray K. Teris, Ph. D. (apparently a clinical psychologist; no professional qualifications sheet on him is included in the record). This examination dealt mainly with plaintiff's intelligence and personality. Dr. Teris states that the stress the plaintiff is under has caused him to be less adaptable than one imagines he should be and concludes that the kind of symptoms this man displays may be exacerbated by emotional factors and that he might be able to obtain employment "if he were in a little better shape emotionally" and would adapt "once he has settled his personal adjustment problems". He notes a "marked personality problem which seems to have been in existence over a number of years." (Tr. 193).

■ This is not the type of evidence on which the trier of fact can make a

determination of the existence or the nature and extent of plaintiff's disability flowing from psychosomatic or psychoneurotic causes.

As the record in its present condition is inadequate for any determination as to plaintiff's emotional disability, we will remand the within action to the Secretary of Health, Education and Welfare for the taking of evidence on the issue of plaintiff's emotional disability.