**Kermit STRAYHORN, Plaintiff,**

v.

**Joseph CALIFANO, Secretary of H. E. W., Defendant.**

**No. LR–C–77–133.**

United States District Court, E. D. Arkansas, W. D.

June 6, 1979.

Sam Hilburn, North Little Rock, Ark., for plaintiff.

Arthur D. Chavis, Jr., Asst. U.S. Atty., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ARNOLD, District Judge.

This is a social security disability case. The Secretary has filed a motion for summary judgment. The plaintiff opposes the motion and asks that the case be remanded for additional administrative proceedings.

The plaintiff, Kermit Strayhorn, is 45 years of age. He was born in Lonoke, Arkansas (T. 31), and lives currently in North Little Rock with his wife, Lorraine (T. 32). He completed the eleventh grade in school, and then completed his high school education by taking a G.E.D. in the service (T. 32). After leaving the service, plaintiff took advantage of the G.I. bill by studying refrigeration and air conditioning at Oklahoma A.&M. Tech. (T. 32). Since October, 1975, he has been receiving $35.00 per month from the Veterans Administration for a service-connected disability (10% to the left ankle) (T. 33).

Since completing training in refrigeration and air conditioning in 1957, plaintiff has worked in that field. This type of work is physically demanding. It calls for lifting compressors and other equipment, using wrenches (T. 36), and bending, stooping, squatting, and reaching (T. 37). On June 17, 1975, while on the job, the plaintiff hurt

his back (T. 38); it was the fourth time he had hurt it, the first being in 1965 (T. 38). The injury occurred while plaintiff was lifting a compressor. He experienced a sudden sharp pain in the periscapular region which lasted for roughly two minutes. He then began to experience pain behind his eyes and an aching toward the back of his head and neck. He has experienced some blurring of vision. He has also experienced pain radiating from his neck to his shoulders and down both arms into his wrists and hands (T. 38, 97). Physicians at a V.A. hospital suggested a cervical collar, which the plaintiff wears when he drives the car or walks (T. 39). He takes Valium for muscle relaxation, and Darvocet for pain (T. 39). He does physical therapy at home by exercising his neck for ten to twenty minutes, three times a day (T. 41). The plaintiff feels some relief from taking the Valium (T. 42). He believes, however, that the vertebrae in his back have been deteriorating, and that sometimes they get out of place (T. 43).

The plaintiff testified that he was not able to perform even the lightest housework. Usually he has trouble sleeping, and is troubled a great deal by pain in his back, neck, and arms, and pressure in this head (T. 34). Since the June 17 accident, the plaintiff has not worked at all (T. 34).

The plaintiff's wife, Lorraine Strayhorn, testified that prior to the June 17 accident her husband had no observable physical limitations; since that time, however, he has not been able to perform ordinary duties such as light housekeeping and driving (T. 46). She testified that occasionally he has trouble sitting at the table at meals, and sometimes she has to cut his meat for him (T. 47).

During the course of treatment for his back injury, the plaintiff was seen by several physicians. Dr. Chester Chinn (Chinese Physician—Master Acupuncturist) saw him shortly after the June 17 injury, and reported that he was experiencing "excruciating pain at the base of the skull and suffering from severe headaches"; it was further reported that plaintiff "responded favorably to our [Dr. Chinn's] treatment." (T. 110).

Dr. Anthony B. Serfustini, an orthopedic surgeon, examined plaintiff on August 22, 1975. He examined x-rays and found no significant foraminal encroachment; there was no evidence of fracture, and no tumorous or infectious processes were found. He further reported that "overall muscle mass, strength, coordination, as well as sensation to upper limbs, appear to be normal." (T. 97). Dr. Serfustini's impression was acute cervical strain, and he gave the opinion that "many of his complaints are quite functional, and in this examiner's opinion have no organic basis." In order to rule out nerve-root compression, however, Dr. Serfustini referred plaintiff to Dr. Frederick Boulware, a neurologist, for consultation and E.M.G. (T. 96).

Dr. Harry E. Fightlin examined the plaintiff on August 26, 1975, and took x-rays of his back. He reported minimal degenerative arthritis of C5 and C6 which he found to be of no significant concern in view of the normal E.M.G. Dr. Fightlin gave the opinion that plaintiff should have no permanent disability of an organic basis (T. 109).

Dr. Boulware made a neurologic examination on September 11, 1975. After a complete examination, Dr. Boulware found no "significant neurological problem with this patient. It is my opinion that his complaints as well as many of the features of his examination are functional." An electroencephalogram, computerized neuroscan, and electrodiagnostic studies showed no significant abnormalities (T. 97). Dr. Boulware concluded his report by stating that "I would see no reason why he should not become more active." (T. 98).

Plaintiff was examined by Dr. Raymond Vance upon his admission to the V.A. hospital on September 25, 1975. Dr. Vance's impression was acute cervical strain. He reported that the plaintiff had an "extremely large functional overlay to his symptoms." The Department of Neurosurgery of the V.A. felt that his symptoms were suggestive of a hysterical conversion reaction, and a psychiatric follow-up was suggested (T. 102). Dr. Vance discharged plaintiff on October 4, 1975, and reported

that he was capable of handling his own affairs (T. 103).

Dr. L. L. Thompson conducted an orthopedic examination on March 2, 1976. Examination of plaintiff's neck and upper extremities showed a range of motion that was 75% of the expected normal (T. 133). There was no measurable atrophy in the arms or calves; a straight leg-raising test was bilaterally negative. Dr. Thompson diagnosed degenerative arthritis in the cervical spine with no neurological deficit (T. 134).

A vocational expert, Dr. Robert O. Morrow, testified that the plaintiff had a knowledge of electrical motors, conduits, blueprint reading, and tools, and that this knowledge and accompanying skills would transfer to some kinds of lighter work. He specifically mentioned work at a small motor assembly plant. Further, Dr. Morrow testified that plaintiff could work as a partsman or counterman, particularly within an electrical supply house, and that perhaps he could become a salesman of appliances or electrical parts. Also mentioned by Dr. Morrow was the position of building maintenance engineer. (T. 54). Dr. Morrow estimated that there were roughly 2,200 partsman or counterman jobs in the area, and 138,000 sales jobs in Arkansas, of which at least 3,000 are related specifically to electrical appliances and electrical supply (T. 55).

The Administrative Law Judge found that the plaintiff could no longer perform his previous job, but concluded that he was not precluded from light and sedentary work in jobs which existed in substantial numbers in the area. He held that the plaintiff was not precluded from light employment after March 2, 1976, the date of the examination by Dr. Thompson, and that since he was not precluded from engaging in substantial gainful activity for a period of twelve months, he was not disabled within the meaning of the Social Security Act (T. 7–11). The Appeals Council affirmed this decision on March 11, 1977, and this suit followed.

The Secretary argues that the decision is supported by substantial evidence on the record as a whole and should be affirmed. The plaintiff, on the other hand, argues that the Administrative Law Judge committed reversible error in failing to consider and address the issue of plaintiff's disabling mental impairment. The plaintiff asks that his case be remanded to allow the taking of additional evidence on this issue and to allow the Secretary to make specific findings with regard to it.

■ In order to justify remand, the plaintiff must show good cause; moreover, he must show that the new evidence he intends to develop is not merely cumulative and that if it were a part of the record, the Secretary's decision might be different. The plaintiff is entitled to a remand if the judge below failed to develop the record fully. *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir. 1974).

There are several indications in the record that plaintiff's complaints of pain and stiffness were primarily psychosomatic in origin. Dr. Serfustini, the first physician to examine plaintiff, stated that "many of his complaints are quite functional . . . ." Dr. Boulware gave the opinion that "his complaints as well as many of the features of his examination are functional." Dr. Vance reported that the plaintiff had an "extremely large functional overlay to his symptoms." The Department of Neurosurgery at the V.A. hospital felt that his symptoms were suggestive of a "hysterical conversion reaction." All of these opinions were in the record upon which the judge based his decision. Yet, there is absolutely no indication that a disability of psychosomatic origin was even considered. The decision below avoids the issue entirely. The decision concentrates exclusively on whether the plaintiff had a physical impairment which was disabling; no indication is given that the medical opinions of "functional overlay" or "hysterical conversion reaction" were even considered. There is no discussion of plaintiff's complaints of pain.

■ A psychosomatic or psychological condition can be disabling. In *Page v. Celebrezze,* 311 F.2d 757 (5th Cir. 1963), the Court reversed and remanded for further administrative proceedings because the tri-

er of fact failed to address the question whether the claimant's pain was disabling. The Court strongly implied that the trier of fact must make specific findings on the issue:

> Where the medical evidence of record before the trier of fact substantially indicates, as it does here, that the ascertainment of the existence of actual disability depends upon determining the truth and reliability of complaints of subjective pain or the medical significance of such complaints once credited, the trier of the fact—whether Examiner or Appeals Council—has a duty to pass on that issue.
>
> . . .
>
> [T]here has been no real determination by the trier either as to the existence or the nature and extent, of disability flowing from psychosomatic or psychoneurotic causes. Consequently, the case must be reversed and remanded for further proceedings before the administrative agency.

*Id.* at 763.

 In order to conduct an intelligent judicial review of the Secretary's decision, the Court must be able to discern the rationale for the decision. The Court should not speculate as to his findings. *Williams v. Celebrezze,* 359 F.2d 950 (4th Cir. 1966). If the decision fails to deal specifically with important issues, the Court may reasonably conclude that the administrative law judge failed to consider those issues. In *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), the Court gave the following direction to the agency:

> In our view an examiner's findings should be as comprehensive and analytical as feasible, and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 312. If the decision contains no discussion of whether the claimant is suffering from a mental impairment, when the record here contains evidence clearly warranting such a discussion, the Court must conclude that the Secretary failed to consider the question, and such failure would constitute reversible error. This Court therefore holds that when the record contains evidence that a claimant is impaired to some substantial degree by a condition which is psychogenic or psychosomatic in origin, the administrative law judge should address the question whether such impairment is disabling. When there is substantial evidence of a possible mental impairment, he is not free to focus solely on whether the claimant's physical impairment alone is disabling. Here, because there is no indication that the Secretary considered the question whether the claimant was disabled because of a mental impairment, or because of the combined effect of a physical and a mental impairment, the decision must be reversed and remanded for further findings.

 There is a second, related reason why remand is required. The medical reports recounted above provided a sufficient justification for a psychiatric examination of plaintiff to explore further the question of disability due to mental impairment. Yet, it is clear that such an examination was not ordered by the judge, and there is no indication that such an examination was ever conducted. The judge has the responsibility for developing a record which is fair and complete, and if he does not, his decision cannot withstand judicial review. This is especially true when, as here, the claimant appears without counsel. *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir. 1974). The claimant has counsel in this Court, however, and he has submitted as a justification for remand a February 3, 1977, medical case summary from Dr. Fred O. Henker, III, Professor of Psychiatry at the University of Arkansas for Medical Sciences. After conducting a psychiatric evaluation, Dr. Henker gave the opinion that plaintiff was depressed, had a personality with elements of "hysteria, passive aggression and inadequacy," and manifested a "possible psychophysiologic musculoskeletal disorder." In a letter dated May 9, 1977, Dr. Henker indicated that plaintiff's case was presented to

a Psychosomatic Symposium and the consensus was "that a large amount of subjective response is being shown for the limited amount of demonstrable physical pathology." Although this opinion still is not conclusive on the disability question, of course, it underscores the need for further investigation of this aspect of plaintiff's impairment. Upon remand, the administrative law judge should thoroughly explore this issue and order the gathering of such further evidence, including reports of psychiatrists or psychologists, as will provide a fair and complete record.

The Secretary's motion for summary judgment is denied. The plaintiff's motion for remand is granted, and the case is remanded to the Secretary with directions to carry into effect this Court's holding.

IT IS SO ORDERED this 6th day of June, 1979.