**Gregorio Molina CANCEL**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services.**

Civ. A. No. 78–3570.

United States District Court, E. D. Pennsylvania.

March 4, 1981.

José Morales, Patricia Smith, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Joan K. Garner, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

GILES, District Judge.

This is an action under Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, ("the Act") 42 U.S.C. § 405(g) and 1383(c)(3), to review a final decision of the Secretary of Health, Education and Welfare (hereinafter "Secretary") denying the concurrent claims of plaintiff, Gregorio Molina Cancel for disability benefits under Title II of the Act, 42 U.S.C. § 416(i) and 423 and for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381a. The June 19, 1978 determination of an Administrative Law Judge ("ALJ")

was adverse to plaintiff. The ALJ concluded that the evidence adduced at the hearing failed to show that plaintiff's alleged impairments, either singularly or in combination, were severe enough to prevent him from engaging in substantial gainful employment. The ALJ also considered plaintiff's complaints of pain. He concluded that while the record evidence established that claimant may experience some discomfort, the record failed to show the existence of any significant medical abnormalities to support a finding that the pains are incapacitating. The ALJ's decision was affirmed by the Appeals Council on August 22, 1978 and it, therefore, became the final decision of the Secretary. Plaintiff appealed from the final decision. Both parties have moved for summary judgment.

The sole issue before the court is whether there is substantial evidence to support the Secretary's final decision denying both disability insurance and supplemental security income benefits. The standards of judicial review are the same for both benefit claims and the discussion below applies equally.

Plaintiff filed for disability insurance and supplemental security income benefits on May 7, 1975. He claimed disability and inability to work since June 1975 as the result of a heart condition, back ailment, ulcers, asthma and leg ailments. Plaintiff makes two arguments. He contends first that the Secretary failed to sustain his burden of proving that plaintiff can engage in substantial gainful employment. He complains that the ALJ elicited through a hypothetical question an opinion from plaintiff's vocational rehabilitation expert that plaintiff could perform certain sedentary and light jobs, assuming a finding that there were no physical or mental impediments to plaintiff's undertaking such activities. (Tr. at 17). Plaintiff submits the hypothetical question was not based upon record evidence and, therefore, was improper. Second, plaintiff contends that the ALJ in his decision erred in rejecting claimant's complaints of pain as nondisabling. The Secretary submits that there was substantial evidence for the finding of the lack of

disability under the Act and that the ALJ did address adequately plaintiff's complaints of pain in the context of the competent medical evidence. We agree.

For the reasons set forth below, the court grants the Secretary's motion for summary judgment and denies plaintiff's.

The plaintiff was born on December 2, 1925 and attended school in Puerto Rico through the eighth grade (Tr. 39). He last worked in 1973 in a metal factory but only for three weeks. He operated a machine that cut, folded and formed metal. He was required to stand continually and to use his feet and hands (Tr. 41–42). He stopped working because he claimed he was suffering from disabling pains in his back, arms, legs and stomach. He has not worked since that time (Tr. 45, 87).

Prior to working in the metal factory, plaintiff worked in a china factory in Puerto Rico for twenty years. His job involved pushing boxes of dishes from one department to another using a cart (Tr. 43–45). He came to the mainland in 1973. He does not speak English.

Plaintiff claims to have pain in both his legs but more so in the left leg. He testified that his left kneecap pinches (Tr. 50) and that he "almost always" has pain in his legs and feet (Tr. 46). Plaintiff testified that he is currently being treated by Dr. Steven L. Barnett, a chiropractor, for leg and back problems. He receives massages for the pain and testified that these give him some relief. He wears special bandages on his left kneecap and ankle (Tr. 55) as well as a special type of girdle on his back to relieve the pain (Tr. 57).

Plaintiff claims that he cannot sit for long periods of time due to the pain in his lower back but that the pain is alleviated somewhat by the special girdle he wears for five or six hours each day (Tr. 58). He claims that he is only able to stand for about one hour without experiencing "very strong" pain in his back and legs. He claims that he can only walk about a half a block or a block without pain. When he does experience pain, he takes medication or uses Ben-Gay. Occasionally, he lies down (Tr. 65).

The pain pills and Ben-Gay for his back were prescribed by G. E. Gonzalez, M.D. who also gave him medication for his asthma (Tr. 60–61). Dr. Gonzalez reported that plaintiff was his patient from December, 1974 until February, 1976, but noted that since he had not seen the plaintiff for more than a year, he could not give a prognosis as to his condition as of the time of the hearing (Tr. 190). Dr. Gonzalez diagnosed the plaintiff as having a hiatal hernia, ulcer disease and allergic rhinitis. At his last examination, in February, 1976, plaintiff's condition was found to be stable except for epigastric pain, belching, heartburn, and a runny nose (Tr. 135). In a report dated July 29, 1977, Dr. Gonzalez concluded that the plaintiff was suffering from bronchial asthma, ulcer disease and degenerative lumbar arthritis.

Dr. Steven L. Barnett reported that he treated the plaintiff from December 24, 1976 until August 5, 1977 at a frequency of two or three visits each month for a chronic low back condition. Plaintiff's symptoms included muscle spasms along the paravertebral borders of the lumbar spine. Both an Ely heel to buttock test and a laseague test proved positive on the right side. Also, an X-ray study revealed disc narrowing at L4–L5 and L5–S1 with an increased lumbar curve. Dr. Barnett concluded, however, that future prognosis depended upon the ability to reduce muscular spasm along the lumbar spine and the "holding factor" of the sacroiliac articulation (Tr. 185, 191–192). He did not rule out a remedial course of treatment.

The plaintiff was examined by Paul B. Solnick, M.D., an internist and pulmonary specialist, on May 27, 1976 at the request of the Bureau of Vocational Rehabilitation, Disability Determination Division. Dr. Solnick concluded from a study of medical records from Hahnemann Hospital that the plaintiff's chronic duodenal ulcer and his possible hiatal hernia with gastroesophageal reflex had not been associated with any complications of ulcer disease and should be responsive to medical therapy.

The plaintiff told Dr. Solnick that he had suffered with asthma for the past three or four years. Examination of the plaintiff's lungs revealed the presence of a prolonged expiratory phase and expiratory wheezes were audible throughout all lung fields. Ventilation studies indicated the presence of moderately severe obstructive pulmonary disease. However, the chest X-ray was within normal limits and revealed no evidence of active or acute pulmonary disease. Dr. Solnick diagnosed a condition of moderately severe chronic obstructive pulmonary disease combined with asthma, allergic in origin. However, he concluded that this condition would respond to medical treatment if plaintiff stopped smoking completely and received medical therapy. Plaintiff gave a smoking history of one-half pack of cigarettes per day for 34 years.

Although plaintiff said he had a heart problem, Dr. Solnick's examination was negative as to any heart condition. There was no evidence that the plaintiff's heart was enlarged, no murmurs were audible and the rhythm was regular.

On February 15, 1977, plaintiff was examined by Dr. James P. Marvel, a board-certified specialist in orthopedic surgery. He diagnosed the condition as minimal degenerative disease of the lower lumbar spine (Tr. 179). Physical examination revealed an apparent 60 percent restriction of motion of the lumbar spine and tenderness in the lower lumbar midline. A neurological examination revealed equal deep tendon reflexes with no apparent weakness. Dr. Marvel concluded that even though plaintiff did not have good strength in extending his knees, there was no muscle atrophy or vasiculation to establish the existence of a true weakness. Plaintiff appeared to have full hip flexor strength and dorsiflexor strength of both feet and toes. Deep tendon reflexes were equal and active, straight leg raising test and sitting root test were negative bilaterally (Tr. 179).

Dr. Marvel concluded that plaintiff had the physical capacity to stand or walk for up to four hours, to sit for up to five hours, and to lift up to 10 pounds frequently (Tr. 180). He further concluded that plaintiff's symptoms were "somewhat exaggerated" given the objective findings of the clinical examination and X-ray. Dr. Marvel further concluded that plaintiff could work at a sedentary position but should be restricted from prolonged standing, repeated bending and heavy lifting (Tr. 178–180). He ruled out the need for a myelography to aid diagnosis.

Medical records from Hahnemann Hospital revealed that the plaintiff received treatments for complaints of back pain beginning in December 1973 as a result of a fall. In March 1974 the records show that the plaintiff complained of pains and numbness in his left leg. The plaintiff was diagnosed as having a lumbosacral strain. However, in April 1974, it was noted that he had no pain over the lumbosacral area and in May the strain had not become worse. In June 1974, the plaintiff experienced pain and swelling with effusion of the left knee as a result of a fall. However, X-rays showed no fracture, dislocation or abnormalities (Tr. 151). Tenderness in the paraspinal muscles was noted in December 1974 but there was full range of motion of the joints with no edema present when plaintiff was examined on April 18, 1975.

The plaintiff stated that he had had an ulcer for the past ten years and that he was on a special diet and medication. However, he admitted that he had not required medical treatment for the three previous years (Tr. 64).

In describing his daily activities, plaintiff indicates that he only leaves his house about twice a week. He spends most of his time either sitting at the window or at the table or watching television. He sometimes naps during the day since he does not sleep well at night (Tr. 76–78). He does not do any housework, cooking or shopping. His wife helps him bathe, shave and dress (Tr. 78–79). He does not drink but he continues to smoke a half pack of cigarettes each day (Tr. 79). Plaintiff indicates that he does read occasionally but has difficulty seeing. He testified that he had been prescribed eyeglasses but could not afford to buy them (Tr. 66).

A vocational expert, H. D. Friedman, testified at the administrative hearing. He characterized plaintiff's work experience as unskilled and primarily in the medium to light category since it has required gross eye-hand coordination, the ability to push, pull, lift and carry, some bending and gross eye-hand-foot coordination. He added that no specific academic requirements were necessary for any of the jobs plaintiff had previously performed (Tr. 89). Mr. Friedman opined that if plaintiff had all of the restrictions, limitations and pain alleged, given his age, education and work history, he would not be able to perform any kind of job. However, he further opined that if the plaintiff did not suffer from all of the physical impediments he claimed to have, he could perform sedentary work such as simple bench work including binding, labelling, dipping, collating and inspection. He stated that in such case plaintiff would be capable of performing tasks in the light work category such as ticket taker, laundry porter and selective light janitorial or grounds keeping work (Tr. 92). He concluded that plaintiff would not be able to perform any job if he could only sit for a half hour before having to take medication and if he would have to lie down to alleviate his pain (Tr. 94–95).

A claimant satisfies his initial burden of proving entitlement to disability benefits by having his treating physician substantiate his subjective claims. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). The ALJ is not bound to accept the conclusion of claimant's physician without weighing it against other relevant evidence. *Urgolites v. Finch*, 316 F.Supp. 1168 (W.D.Pa.1970). However, if no contradictory evidence exists, the ALJ is bound by the expert opinions of claimant's treating physician regarding the existence of the disability. *Rossi v. Califano*, 602 F.2d at 57–58; *Eiden v. Secretary of H.E.W.*, 616 F.2d 63, 64 (2d Cir. 1980); *McLaughlin v. Secretary of H.E.W.*, 612 F.2d 701, 705 (2d Cir. 1980). The Secretary then must come forward with evidence showing that given claimant's age, education, and work experience, claimant can perform specific jobs in the national economy. If no finding exists regarding alternative employment, a denial of disability benefits can be upheld only if there is medical evidence of record that claimant's impairment did not prevent him from engaging in his former employment. *Rossi, supra*, at 57.

Section 205(g) of the Social Security Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. 405(g). Judicial review of the Secretary's factual determinations is limited solely to ascertaining whether they are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If so, the Secretary's decision must be affirmed even though the record may also support a contrary conclusion. *DeNafo v. Finch*, 436 F.2d 737 (3d Cir. 1971). However, the reviewing court has a duty to make a searching investigation of the record in order to determine whether the Secretary's decision is supported by substantial evidence and whether it was made in accordance with the proper legal standards. *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972). *See also Lincovich v. Secretary of Health, Education and Welfare*, 403 F.Supp. 1307 (E.D.Pa.1975). The Supreme Court has characterized substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra* 402 U.S. at 401, 91 S.Ct. at 1427.

The definition of disability set forth in the Social Security Act provides in pertinent part:

(d)(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; ...

(B) ...

(2) For purposes of paragraph (1)(A)—

(A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) ...

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

.    .    .    .    .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

42 U.S.C. § 423 (1976).

The presence of a disease does not establish disability within the Act. *Davis v. Califano,* 439 F.Supp. 94, 97 (E.D.Pa.1977). The applicant must also present evidence that his impairment rendered him unable to engage in any substantial gainful employment before the expiration of his insured status. *Gardner v. Richardson,* 383 F.Supp. 1, 4 (E.D.Pa.1974). Further, a medical condition which begins during a claimant's insured period, but does not become disabling until after its expiration, may not be the basis for qualification for disability benefits under the Act. *Capaldi v. Weinberger,* 391 F.Supp. 502, 503 (E.D.Pa.1975).

In the present case, after reviewing the medical exhibits, the hearing testimony and claimant's subjective complaints, the ALJ found claimant's pain was nondisabling; it was incompatible with the medical findings. "Pain may be disabling, ... and a claimant's assertions of pain must be given serious consideration, ... even where those assertions are not fully confirmed by objective evidence, ..." *Smith v. Califano,* 637 F.2d 968 at 972 (3d Cir. 1981); *accord, Bittel v. Richardson,* 441 F.2d 1193 (3d Cir. 1971). However, a finding of a complaint of pain does not suffice to establish claimant's disability. The Third Circuit only holds that complaints of pain must be given serious consideration. The ALJ did give claimant's complaints such consideration in this case. The ALJ acknowledged claimant's subjective symptoms and evaluated them in light of the medical evidence. The medical examination by Dr. Marvel, an orthopedic specialist, showed no objective basis for the pain in the knee or back even though Dr. Marvel used X-rays in attempting to ascertain the cause of claimant's pain. Furthermore, Dr. Marvel found full hip flexor strength and dorsiflexor strength of both feet and toes and that straight leg raising tests were negative. Based on this medical evidence, Dr. Marvel concluded that claimant's complaints of pain were "somewhat exaggerated" and that plaintiff could work. The medical opinions were uniform that his other medical conditions should be responsive to therapy and treatment.

Relying on the medical evidence outlined above, the ALJ did not find claimant's allegations of disabling pain persuasive. Where an ALJ affirmatively considers subjective pain, specifies his reasons for rejecting claims of such pain and supports his conclusion with medical evidence of record, he may reject a claim of disabling pain. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974); *Torelli v. Weinberger,* 423 F.Supp. 606 (E.D.Pa.1976).

Plaintiff's contention that the ALJ erred in finding that plaintiff could perform sedentary work is without merit. The evaluation and conclusion of Dr. Marvel

was that plaintiff could do work of a light or sedentary nature.

The vocational expert was properly asked questions about sedentary jobs for which plaintiff might be vocationally qualified, assuming him to be physically and mentally competent. *See e. g., Hess v. Secretary of H.E.W.*, 497 F.2d 837, 839 (3d Cir. 1974). The expert opined that plaintiff was vocationally able to perform a range of such jobs and that they exist in large numbers in the area surrounding plaintiff as well as in the national economy. Substantial medical evidence existed that plaintiff's pulmonary condition was not disabling. It would probably improve with cessation of cigarette smoking. There was no evidence of heart disease or a heart condition. The medical evidence demonstrates his ulcer problems were also treatable. Considering the record as a whole, this court concludes that the Secretary's decision that plaintiff was not disabled was based on substantial evidence and rational analysis of that evidence. *Cotter v. Harris*, 642 F.2d 700 at 704–705 (3d Cir. 1981).

Having found that there was substantial evidence to support the Secretary's decision, we shall consider plaintiff's alternative request that the matter be remanded. Plaintiff's asserted basis for remand is the ALJ failed to give specific reasons for rejecting plaintiff's complaints of disabling pain. This point has already been addressed by the court.

To justify remand of a disability case for the taking of additional evidence, the claimant must show that the new evidence he intends to develop is not merely cumulative and that, if the new evidence were made a part of the record, the decision might be different. *Strayhorn v. Califano*, 470 F.Supp. 1293 (E.D.Ark.1979). "Good cause" for an order to remand a case to the Secretary consists of more than "new evidence;" additional evidence must also be relevant and probative, and plaintiff must show that its absence resulted in unfairness. *Cf. Hess v. Secretary of Health, Education and Welfare, supra.*

The mandated scope of review precludes this court from substituting its judgment for that of the Secretary, where, as here, the decision of the Secretary is supported by the record as a whole.

Since there is no basis for the finding that the additional evidence would alter the Secretary's decision and there is insufficient evidence of prejudice in the conduct of the hearing, the plaintiff's request for remand must be denied.